UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFREY TURNBOW, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-2835 |
| | § | |
| PNC MORTGAGE, *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is the Motion to Dismiss (Doc. 6) filed by Defendants PNC Mortgage ("PNC") and Deutsche Bank Trust Company Americas ("DBT") (collectively "Defendants"), Plaintiffs Jeffrey and Anita Turnbow's ("Plaintiffs" or "the Turnbows") Response (Doc. 11), and Defendants' Reply (Doc. 14).  Having considered Defendants' motion, Plaintiffs' response, and the reply thereto, the facts of this case, and the relevant legal authority, the Court grants Defendants' motion to dismiss.

I.    **Background**

In 2006, the Turnbows financed their purchase of the real property located at 9803 Deer Path Lane, Magnolia, Texas 77354, by executing a Note in favor of PNC and a Deed of Trust to secure payment of the Note.  Pl.'s Original Pet. Doc. 1-1, Ex. A (Loan Modification Agreement) at 2.  In December 2011, the Turnbows requested and were approved for a loan modification that lowered their monthly payments.  Doc. 1-1 at 3; Doc. 1-1, Ex. A.  The Turnbows' original petition states that they "submitt[ed] all required documents . . . in *strict compliance* with the loan modification agreement (the

"Modification")."  Doc. 1-1 at 3 (emphasis supplied).  However, the exhibits that the Turnbows attached to their petition clearly demonstrate that is not the case.

The letter attached to the Modification instructed the Turnbows to return the Modification by December 31, 2011 with an initial payment of $3,460.53, using certified funds, which reflected the amount of the first payment under the modification ($2,753.53) as well as the modification closing costs ($725.00).  Doc. 1-1, Ex. A at 1. The Turnbows signed the Modification on January 12, 2012, and purchased a cashier's check for the initial payment on February 2, 2012.  Doc. 1-1, Ex. B (Proofs of Payment) at 1.  The Modification itself provided, "[The Turnbows] promise[] to pay monthly payments of principal and interest in the amount of $2,735.53 beginning on the 1st day of January, 2012.  [The Turnbows] will continue to make monthly payments on the same day each succeeding month until principal and interest are paid in full."  Doc. 1-1, Ex. A at 3.  The Turnbows did not submit their next monthly payment until February 2, 2012 in the amount of $2,735.53.  Doc. 1-1, Ex. B at 2.  Their next payment was submitted on March 4, 2012, and their last payment was submitted on April 12, 2012, which included a late fee.  Doc. 1-1, Ex. B at 3-5.  On April 20, the April payment was returned to the Turnbows with a letter stating that the amount was "not sufficient to reinstate your loan from default."  Doc. 1-1, Ex. B at 4-5.  The Turnbows argue that, "[i]n essence, Defendants are attempting to foreclose after Plaintiffs' loan has been modified and Plaintiffs have performed under the terms of such modification."  Doc. 1-1 at 4.

Although Defendants were not required to accept the Turnbows' overdue submission of the Modification[1], the record supports Defendants' assertion that they did,

---

[1] Paragraph 5 of the Loan Modification Agreements states, "[i]f the signed and notarized agreements are not received by December 31, 2011, the offer to enter into a Loan Modification Agreement may be

and accepted payments thereunder. Def.'s Mot. to Dismiss Doc. 6 at 2; Doc. 1-1, Ex. B. Under the terms of the Modification, "[a]ll rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of Payments under the Security Instrument shall also apply to default in the making of modified payments hereunder." Defendants' remedies for default under the Note included foreclosure. Doc. 6-1, Ex. A (Note) ¶ 10.

On August 7, 2012, Defendants proceeded to foreclose the Property. Doc. 1-1 at 10. On August 8, 2012, the Turnbows filed their original petition against Defendants in the 9th Judicial District Court of Montgomery County in order to forestall the foreclosure sale. Doc. 1-1. In Plaintiffs' original petition, they assert causes of action for breach of contract, fraud/intentional misrepresentation, constructive fraud/negligent misrepresentation, violations of the Texas Debt Collection Practices Act, and declaratory and injunctive relief. Doc 1-1. On September 9, 2012, Defendants removed that case to this Court under the Court's diversity jurisdiction, and on November 9, 2012, Defendants filed their motion to dismiss under Rule 12(b)(6).

## II.     Legal Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint, viewed in the light most favorable to the plaintiff, must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

rescinded, and foreclosure may be initiated in accordance with the terms of your original agreement and to the extent permitted by applicable law."

defendant is liable for the misconduct alleged." *Id.* Determining the reasonableness of such an inference is "a context-specific task that requires the … court to draw on its judicial experience and common sense." *Id.* at 679. While a court must accept all of Plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Fraud claims must satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): that "a party must state with particularity the circumstances constituting fraud." The Fifth Circuit interprets Rule 9(b) to require "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

On a Rule 12(b)(6) review, the court may consider "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017–18 (5th Cir. 1996)). Matters of public record that appear in the record of the case may also be considered. *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Taking judicial notice of public records directly relevant to the

issue in dispute is proper in a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk*, 631 F.3d at 780.

### III. Discussion

In their original petition, Plaintiffs attempt to assert the following claims: (1) breach of contract; (2) fraud/intentional misrepresentation; (3) constructive fraud/negligent misrepresentation; (4) violations of the Texas Debt Collection Practices Act; and (5) injunctive and declaratory relief. For the reasons stated below, Plaintiffs' claims against PNC and DBT are subject to dismissal for failure to state a claim.

#### A. Breach of Contract

Under Texas law, the essential elements of a breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the Defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l., Inc. v. Eagle Group, LLC*, 490 F.3d 380, 386 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App. 2001)). In the original petition, the Turnbows allege that Defendants are in breach of the parties' loan modification agreement (the "Modification") based on Defendants' attempted foreclosure of their home despite the Turnbows "strict compliance" with the Modification and Defendants' accepting payments thereunder. Doc. 1-1 at 5. Also, the Turnbows claim that Defendants have breached their contract by failing to comply with the Housing and Urban Development (HUD) regulations regarding loss mitigation strategies prior to acceleration and foreclosure. Doc. 1-1 at 4-5.

In Defendants' motion to dismiss, they argue that the Turnbows have not complied with the terms of the Modification, and that the HUD regulations do not support their breach of contract claim. Doc. 6 at 5-6. HUD regulations apply only to FHA loans, and the Turnbows have not offered any facts to show that their loan is an FHA loan. Doc. 6 at 5-6. Further, violations of HUD regulations cannot be used to assert a breach of contract claim unless the regulations have been expressly incorporated into the Note and Deed of Trust. Doc. 6 at 5-6. In their response, the Turnbows do not assert any additional facts to support this claim, and, to the contrary do not even mention the HUD regulations. Doc. 14.

The specifics of the Turnbows' breach of contract claim are scant. What is clear from the face of the original petition and the attached exhibits is that the Turnbows have not performed or tendered performance. The exhibits show that the initial payment under the Modification was due December 31 and was not received until sometime after February 2. Each subsequent payment was more than 30 days late (January 1 payment received February 2; February 1 payment received March 4; March 1 payment received April 12). The Turnbows have not submitted evidence of any payments made after the April 12 payment. Since the Turnbows have not performed or tendered performance under the terms of the Modification, they are unable to establish one of the essential elements of their claim for breach of contract.

In the Turnbows' response to Defendants' motion to dismiss, they ignore Defendants' argument that they have failed to perform under the agreement, and attempt to restyle the claim as one for breach of oral contract or promissory estoppel. Pl's Resp. Doc. 11 ¶ 15-26. These claims are likewise insufficient to state a plausible

claim as any alleged oral promises fail to satisfy the statute of frauds. See Tex. Bus. & Com. Code Ann. § 26.02(2)(b) ("a loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative"); *Bank v. Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 556 (Tex.App.-Dallas 2009, pet. dismissed) (holding that any modification of a contract within the statute of frauds must itself satisfy the statute of frauds). At the time of the Modification, the Turnbows' unpaid principal balance was $498,251.97, clearly brining the Modification within the statute of frauds. Additionally, page 8 of the Modification includes a "Notice of No Oral Agreements" signed by the Turnbows. The Turnbows point out that the statute of frauds is an affirmative defense that must be stated in a defendant's pleading and cannot be the basis of a motion to dismiss a plaintiff's complaint. Doc. 11 ¶ 16. However, where, as here, the affirmative defense appears clearly on the face of the pleadings, a court may dismiss a breach of contract claim under Texas law for failure to state a claim. *Conceal City, LLC. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 620 (N.D. Tex. 2013).

Defendants' alleged violations of the HUD regulations are likewise insufficient to form the basis of the Turnbows' breach of contract claim since the Turnbows have not offered any facts to suggest that theirs is an FHA loan subject to the regulations, or that the regulations have been expressly incorporated into their Note or Modification. *See Baker v. Countrywide Home Loans, Inc.*, 308-CV-0916-B, 2009 WL 1810336, at *5 (N.D. Tex. June 24, 2009) (citing *Hernandez v. Home Savings Assoc. of Dallas*, 606 F.2d 596, 601 (5th Cir. 1979) (". . . . HUD regulations incorporated into mortgage

documents become part of the contract"). For these reasons, the Turnbows' breach of contract claim fails as a matter of law.

### B. Fraud/Intentional Misrepresentation

To state a claim for fraud, a plaintiff must plead with factual particularity under Rule 9(b) that (1) a material representation was made; (2) that the representation was false when it was made; (3) the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that the speaker made the misrepresentation with the intent that the other party should act upon it; (5) the party acted in reliance on the misrepresentation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001). Plaintiffs must plead the "who, what, when, and where" of the allegedly fraudulent misrepresentation or conduct.

With regard to their fraud/intentional misrepresentation claim, the Turnbows assert that Defendants "knowingly and/or recklessly misrepresented or failed to disclose material facts relating to Defendants' loan modification and foreclosure processes . . . including but not limited to that (1) Defendants had properly processed modification documents; (2) that Defendants would make their decision on [the Turnbows'] modification within a specified time frame, although Defendants kept [them] waiting months longer than promised; (3) that Defendants would not foreclose upon [the Turnbows'] home despite payments make pursuant to the modification agreement; (4) that Defendants had approved [the Turnbows'] loan modification, when it had not; and/or (5) that Defendants had no intention to permanently approve [the] modification." Doc. 1-1 at 6. The Turnbows claim that they relied on these facts, and had they been

aware of the true nature of Defendants' business practices, they would have pursued other options to prevent delinquency on their mortgage payments to avoid foreclosure. Doc. 1-1 at 6.

These vague fraud allegations fail to satisfy the particularity required by Rule 9(b). First, the allegedly fraudulent statements fail to meet the required elements because Plaintiffs have not shown that they were false. Since the Turnbows defaulted even under the modified payment schedule, the Court may assume that Defendants did approve the Turnbows' Modification, as they claim. Doc. 6 at 2. Therefore, the statements that Defendants had processed the Modification, would make a decision regarding it, intended to approve it, did approve it, and would not foreclose upon the Turnbows' home if payments were made pursuant to the Modification were not false, and the Turnbows are unable to prove an essential element of their claim.

The Turnbows' allegations of fraud/intentional misrepresentation fail under the economic loss rule as well. Texas courts have an established state policy against twisting breach of contract claims into tort claims, i.e., the economic loss rule bars tort claims when the parties' relationship and their attendant duties arise from a contract. *See, e.g., Arlington Home, Inc. v. Peak Envtl. Consultants, Inc.,* 361 S.W.3d 773 (Tex. App. 2012) (The economic loss rule "generally precludes recovery in tort when the only economic loss to the plaintiff is the subject matter of a contract."); *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 417 (Tex. 2011) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."). Under the rule, the court examines two factors: the source of the duty and the nature of the remedy. The Turnbows' fraud/intentional misrepresentation claim derives

from the default and enforcement of the indebtedness at issue. Their alleged tort damages are economic and arise from claims dependent upon the existence of a contract. *See, e.g., Wiley v. U.S. Bank, N.A.,* No. 3:11–CV–1241–B, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012). Therefore, under the economic loss rule, the Turnbows are limited to recover under the contract only and may not assert a claim in tort.

### C. Constructive Fraud/Negligent Misrepresentation

In order to state a claim for negligent misrepresentation, a plaintiff must show that (1) the representation was made by a defendant in the course of his business; or in a transaction in which he had a pecuniary interest; (2) the defendant supplied 'false information' for the guidance of another; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, LLC*, 659 F.3d 450, 458 (5th Cir. 2011). Additionally, the misrepresentation must be in regard to an existing fact. *Allied Vista, Inc. v. Holt*, 987 S.W. 2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

The Turnbows claim constructive fraud/negligent misrepresentation based on the same representations alleged in their fraud/intentional misrepresentation claim, except they added two additional purported misrepresentations: (1) that the Turnbows must be delinquent in their mortgage payments in order to be considered for loan modifications; and (2) Defendants would convert the Turnbows to a permanent modification when they made the payments required by the trial modification agreements. Doc. 1-1 at 7-8. The Turnbows constructive fraud/negligent misrepresentation claims also fail for multiple

reasons.

First, the representations that Defendants "*would* make decisions in a specified time frame," "*would* not foreclose," and "*would* convert consumers to permanent modifications" are not actionable because they do not constitute a representation of existing fact, but rather contain allegations as to future conduct. A promise to refrain from doing an act in the future is not actionable in a negligent misrepresentation claim. *Ellis v. PNC Bank, N.A.*, No. 4:11-CV-03990, 2012 U.S. Dist. LEXIS 100384, at *11-12 (S.D. Tex. Jul. 19, 2012) (citing *Ezennia v. Wells Fargo Bank, N.A.*, No. 4:10-CV-05004, 2012 U.S. Dist. LEXIS 60086, 2012 WL 1556170, at *6 (S.D. Tex Apr. 27, 2012).

The only remaining allegations of negligent misrepresentation that might plausibly state a claim, that the Turnbows must be delinquent to be considered for the loan modification, that Defendants had properly processed the loan modification documents, and that the Turnbows had been approved for the Modification, are also insufficient to state a claim. The Turnbows offer no facts as to the "who, what, when, and where" of the statements, and again, they fail to allege how these misrepresentations were false or material since they were ultimately approved for the Modification. Finally, like the Turnbows' claims for intentional misrepresentation, these claims sounds in contract and fall under the economic loss rule. As such, the Turnbows have failed to plead all the essential elements of a negligent misrepresentation action and their claim must be dismissed.

### D. Texas Debt Collection Practices Act

The Turnbows allege that Defendants have violated the Texas Debt Collection Practices Act (TDCPA) by (1) falsely representing the status or nature of the services

rendered in violation of section 392.304(19); and (2) using false representations and deceptive means to collect a debt or obtain information concerning a consumer in violation of section 392.304(10). Doc. 1-1 at 8-9. The Turnbows allege that these unspecified false representations caused them injury. The petition's allegations are conclusory. *See e.g.*, *Franklin v. BAC Home Loans Servicing, L.P.*, No. 3:10-CV-1174-M, 2011 WK 248445, at *3 (N.D. Tex Jan 26, 2001) ("Merely stating Defendant violated the [TDCPA], without more factual allegations, is a legal conclusion couched as a factual assertion, which does not survive a motion to dismiss under the federal rules and applicable law"). As such, the Turnbows' allegations for violations of the TDCPA must be dismissed.

E. **Injunctive and Declaratory Relief**

Finally, the Turnbows request a temporary restraining order and preliminary injunction preventing Defendants from selling or attempting to sell the Property under the power of sale contained in the deed of trust. Doc. 1-1 at 10. The Turnbows also seek a declaration that they are not in default under the terms of the Note and Deed of Trust. Under Texas law, "[i]njunctive relief is simply a form of equitable remedy." *Cook v. Wells Fargo Bank, N.A.*, No. 3:10–CV–0592–D, 2010 WL 2772445, at *4 (N.D. Tex. 2010) (citing *Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 122 (Tex. App. 2008)). To sustain a claim for injunctive relief, a plaintiff must first plead a viable underlying cause of action. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Similarly, a declaratory judgment claim cannot stand alone because it "is merely a procedural device; it does not create any substantive rights or causes of action." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996).

Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive. *See Ayers v. Aurora Loan Servs., L.L.C.*, 787 F. Supp. 2d 451, 457 (E.D. Tex. 2011) (dismissing claim for declaratory judgment where all underlying substantive claims had been dismissed); *Valdez v. Fed. Home Loan Mortg. Corp.*, No. 3:11–CV–1363, 2011 WL 7068386, at *3 (N.D. Tex. 2011) (dismissing claims for declaratory and injunctive relief under Rule 12(b)(6) where plaintiff failed to state his underlying claims for trespass and to quiet title); *James v. Wells Fargo Bank, N.A.*, No. 3:11–CV–2228–B, 2012 WL 778510, at *4 (N.D. Tex. 2012) (dismissing claim for declaratory relief where the "arguments for declaratory relief are unsupported by the facts alleged"). Because Plaintiffs have not stated a single substantive claim for which relief may be granted, their requests for injunctive and declaratory relief must also be dismissed.

## IV.  Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 6) filed by Defendants PNC Mortgage and Deutsche Bank Trust Company Americas is **GRANTED**, and Plaintiffs Jeffrey and Anita Turnbow's case is **DISMISSED**.

SIGNED at Houston, Texas, this 25th day of September, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE